Our next case on calendar is Consumer Financial Protection Bureau v. Aria, 21-55525, and each Does the audio seem okay? Good morning, Your Honor. My name is Tanmay Shukla, Counsel for Amandaria. Can you speak a little louder, please? Sure, yeah. Maybe I'll adjust this. Is this okay? Better, thank you. I'd like to reserve three minutes for rebuttal later. So the first issue in this case is whether Mr. Arya's real and alleged service can be regulated by the CFPA under the Financial Advisory Services Clause. The analysis for the two services is different, so I'd like to talk about them separately. Let's first look at the alleged service. The CFPB says that consumers believe that Mr. Arya would either apply for scholarships on their behalf or award scholarships. And the district court below, the holding is not completely clear, but it seemed to hold that scholarship-related products are proprietary financial products and services. Now proprietary or otherwise, we don't believe that they are financial products or services at all because that's an enumerated 11-part definition. It includes things like extending or servicing loans or deposit-taking activities, nothing even close to scholarships. But how is this different from going to see a financial advisor to order your financial affairs? I mean, at one point, he actually used the term financial advisory in the name of his company, didn't he? But then he changed it at some point during the period of the relevant time period. Yes. I mean, so two points there. Firstly, I think that this question goes to the guidebook, not to the awarding scholarship service. Well, don't we have to look at the whole record, sort of everything that he did? No, absolutely. All I'm saying is that the three counts, two of them attach to one allegation and one of them to the other. So I sort of just wanted to have this like logical hygiene to start with. Logical hygiene. That's a great term. I like it. But with that in place, yes, I agree that the fact that the doing business has name was college financial advisory is something that we should look at. The issue here, Judge Tallman, is that the word financial has two meanings. It can either mean to do with money or it can mean to do with finance or financiers. Now, there's nothing stopping a layperson from talking about themselves as a financial advisor if they're giving advice related to money. But the important thing is that Congress, very clearly in our view, meant it in the latter sense. So if I can give an example from a famous Supreme Court opinion, fish can be a tangible object in a general sense, in a literal sense, but it need not be a tangible object for the purpose of a statute, a criminal statute. And I think it's this similar idea here, which is that there is a sense in which the advice is financial. The precise sense is that the underlying matter is an individual financial matter. But who determines the sense? Do we look at the mind of a reasonable consumer and ask whether or not the students to whom these guidebooks were sent would have reasonably believed that he was offering advice to help them order their financial affairs in order to determine how to pay for college education? Absolutely. I think there's a two-step question here. First is, what kind of service Congress authorized the CFPB to regulate? And let's remember here that there is a general authority to regulate persons like Aria residing in the FTC. And so with that in mind, we're thinking about what the CFPB can regulate. And then, of course, when we come to net impression, we have to see whether consumers thought that that is the kind of service that Mr. Aria was promising to provide. I agree that from the appellate court's perspective, it's a mixed question of law and fact. We look at the words of the statute and the implementing regulations, and then we look at the factual determinations as to what a reasonable consumer would expect on this record to answer the question whether or not Mr. Aria was subject to the jurisdiction of the CFPB or the FTC in regulating his activities. I would prefer a slightly different characterization, Your Honor. I would suggest that what kind of service is covered by the statute, I think it's a pure question of law. But I don't see how you can answer the hygienic question that you ask of us without considering both law and fact. So, I'm struggling to think of an analogy here. You know, since I'm in environmental law in my day job, I'm thinking of something like the Creek Clean Water Act. And there, I think, you know, you can think of, for example, in County of Maui, the Supreme Court said that if we are talking about discharges, we need the functional equivalent of a direct discharge. Sorry, this is just what's popped up. Okay. All right. So, this is, I would say that this is a legal question. And then, because there is a standard which governs the text, to apply that standard, yes, you need to look at the facts. But in terms of statutory interpretation, I feel like it's a purely legal question, which then the district court needs to look at the facts to apply. But I think for the purposes of this court, it is a legal question. Okay. I mean, the Supreme... Go ahead. Sorry. No. Well, it seemed to me that the statute contains more than one potential definition of financial. And if there is ambiguity in the statute, we would look at the legislative history. So what, in your view, do we learn from the legislative history about the extent or scope of the term financial advisory services? Because clearly there's advice here, the question, and there's a service here. So what makes advisory services financial or not? Absolutely. So, two points on this. I think that we can even go a little bit further than legislative history and talk about usage of the same word elsewhere in the CFPA, the Act, as well as the Dodd-Frank Act. So hopefully we look at both that and the amending history or the legislative history. So on the first point, elsewhere inside the Consumer Financial Protection Act, the exact word financial advisor is used in relation to seniors. I believe the citation is 124 Stat 1973 in the Dodd-Frank Act. And there Congress talks about financial advisors who have certifications, who have licenses. And the idea there is that the CFPB should ensure that seniors have a way of checking these things. So I think that that's a pretty clear indication of the kind of service that Congress had in mind. Well, how does that help? Because here your client was giving, I think, a quote from it is, valuable tips, practical strategies, and clear guidelines, that's a quote, I think, for applying to specifically selected financial aid programs. Why isn't that all about finances, just, you know, sitting down with a student and saying, you know, here's how you can get money for college, and we'll give you a lot of practical strategies for that and guidelines for that?  Every sense of the word. Right. So there's an ambiguity here in the way that proceedings happened in the lower court. Everyone talks about financial aid, but I think it's pretty clear from my opposing counsel's brief that everyone understood that financial aid refers purely to scholarships. So that's... Not to student loans? No, not student loans at all. Nobody... All these people were not eligible for student loans? I mean, it's very likely that they were all eligible, but there is no allegation that any consumer thought that Mr. Aria dealt with anything except scholarships. There's nowhere in the record, nowhere in the district court's opinion... So why does that make any difference? That's financial in the most fundamental way. I mean, if I need a scholarship to go to college, that's a financial problem, and if somebody advises me how to deal with it, it seems like financial advice. So the distinction that Congress made here, in our opinion, is that it is an individual financial matter to pay for college, but it's not financial advice. And why is it not financial advice? Your Honor, think about the implications of this. So scholarships are not the only way to fund college apart from student loans. Work studies as well. It works in exactly the same way. You never see the money. I don't see why that makes any difference. I mean, that is a little bit like saying you go to a certified financial advisor who likes to deal only with bonds and doesn't like to talk about stocks. It's still financial advice, even if they limit the nature of the product or financial instrument in which they are interested. So I don't understand why scholarships don't count because you choose not to discuss work study. Sorry, that was – I'll come back to what I meant. I think I need to clarify, but first to answer your question about bonds, bonds are proprietary financial products and services, number one. So they would go into that part of the statute, which is no longer at issue here. The second point is that advice about bonds is inherently financial advice. If you pay me to tell you something about bonds, I am impliedly promising that I know something about something in the system of finance. Well, isn't that exactly what happened here? Pay me money and I will tell you how to get money, a scholarship, to go to college so that you can afford it financially. Yeah, I mean, the way in which you're using financially, I believe, Your Honor, is to do with money, and yes, this is advice to do with money, but if we take the logic of the argument that, you know, you're articulating here, somebody who tells people how to write a compelling essay to get need-based scholarship just to talk about their hardship, they are a financial advisor. No, they're not because they're advising you how to write an essay. They're not advising you – I mean, the problem for your client, it seems to me, is that the statement that they made was, I will tell you, I will specifically select financial aid products and scholarships for you, not I can teach you how to write an essay or, you know, maybe you want to join the tennis team so you have a better, you know, package to send to a college. They're talking not about that. That's not the – that's a different kind of advice entirely. No, I – And this is advice, supposedly, about specifically selected, you know, all the basics of financial aid. That's a quote from your client's materials. No, I agree, and the letter does talk about the general nature of the product. After that, the consumers fill out a form. That form says – so tennis is a good example because some consumers have written that, in my hobbies, you know, they've written a one-word answer saying tennis is my extracurricular activity. So now we have to think about what was the consumer's understanding of the kind of product that they would receive and – I have a question about this. Yes, sure. So I think part of your argument was because the form doesn't have detailed financial information or really any financial information, they must have understood that this wasn't financial in your sense. Yeah. But what I don't understand from looking at this letter – so the letter is what they get, and then they pay the fee. So once they – the letter is really – once they've paid the fee, they've already had the harm. And looking at the letter, I don't understand why they wouldn't think that there'd be further follow-up forms. Like if I pay this fee, they're going to follow up with specific questions to me that might be financial. Like what about this letter tells me that the form you fill out with the letter is the only form they're ever going to fill out? Right. Respectfully, Your Honor, I think – I would question the premise here, which is that we are supposed to look at the letter, we're supposed to look at the entire solicitation, and I have never heard – Well, okay, so the letter is the letter plus the form that comes with it, but not the whole booklet. Like I don't even know if we have to look at the booklet. Yeah, that's right. That is the product. So the solicitation is what creates the impression. So we're looking at the solicitation. It's not that somebody reads the letter and then writes a check. That's not what's happening here. Somebody reads the letter, there's a form attached to it, they have to fill out the form, they have to sign it, and then they have to send it in along with the check. In the record in our reply brief, we've talked about how people did this over a month sometimes. So they had time to look at this, and they – But can you answer my question? Is there anything about it that indicates that they will never be asked further questions on further forms? So at summary judgment, it's not our burden to prove that there's anything about it that indicates that. It's the CFPB's burden to prove. I mean, if that's the question you have, you should remand and ask the CFPB to show that somebody thought that they would be getting subsequent forms. Counsel, the district court focused on the definition of covered person under Section 5481, Subsection 6, which reads, Any person that engages in offering or providing a consumer financial product or service. And why isn't the booklet that was sent a financial product or service which compiled supposedly a list of scholarships that the students might wish to apply to to get more money? The answer is that financial product or service is an 11-category defined term. The guidebook doesn't fit anywhere. So we think that the Honorable District Court completely ignored a definition of a term and just sort of went on its own path, and that was incorrect. Now, on that, I apologize. If I could add one little thing, if there's any doubt about this, consider that everybody stipulated below that only Subsection 8 is applicable. Now, if the guidebook was a financial product and service under some other category, then we wouldn't be arguing about the Financial Advisory Services Clause here. The CFPB would simply say... But isn't that Subsection 8 of 5481? Because that talks about deposit-taking activity. Sorry, I meant Subsection 8, the Financial Advisory Services Clause. You're in a different statute. That's right. That is where the financial product or service term is defined, so I'm sorry. I just... So this gets to your point about you have to be an expert, right? This is what you need... Expertise is just a suggestive test, and certainly we don't mean that you have to be an expert. It's just that if somebody does not purport to have knowledge about the consumer finance sector or something in the sector, if somebody doesn't process your financial information, we believe that consumers... Well, we believe that Congress didn't intend for them to be called financial advisors. And so my question is sort of... I have a similar question about the letter and this expertise or whatever you want to call it, purporting to have knowledge. When they get the letter and they pay the fee, how do they have any idea? I mean, they probably think the person is an expert, but what tells them that the person isn't an expert in the letter before they pay the fee? I guess a preliminary question is why is the focus on the letter alone? The law says the entire solicitation. So the question is... Okay, the letter and the form. That's right. What about that? What about the entire first solicitation tells someone that there's no way the person who sent you this letter is an expert? Well, so I think this is, again, switching the burden of proof. If this is the CFPB's theory that despite the letter or the form, consumers thought that this person is an expert in a finance matter as opposed to an expert in just knowing who is giving out grants, which we believe is not a finance matter. It did more than that, didn't it? It essentially offered to tailor the advice to students who would be eligible for particular scholarships. We agree that the advice is tailored. The question is, is the advice that is tailored on a finance matter? I mean, I agree that... I'm having a hard time understanding your argument. If the object of the advice was to tailor, let's say, tennis scholarships to students who had a particular ability in playing tennis, and wouldn't they have expected that the scholarships that they were directed to were athletic-type scholarships? So, in that example, I would, I suppose... I know I'm not supposed to ask you questions, but... You're quoting Nass. I may not answer it, but you're going to have to ask it. What I would counter is, what is the finance solution being discussed? I think what's being discussed is... Your eligibility for a particular form of scholarship. I mean, there may be a scholarship out there that's specifically tailored to people who want to go to college and play competitive tennis. I agree. And there is a knowledge base here, but the knowledge base is not the knowledge base of somebody in the consumer finance sector. It's not, for example... But you're trying to help the consumer find a source of money, financing for their college education based on their particular circumstances. So, Your Honor, let's imagine that the tennis coach gave this advice for money. Does that make him a financial advisor? It makes him an advisor on individual financial matters. Does it make him a financial advisor on individual financial matters, we believe? Well, it seems to me there's a big difference between telling a student, hey, there's a scholarship out there that is tailored to tennis players, and offering a broader base of just 76,000 people, or whatever the number was. I'm going to help put together a booklet that's tailored to your particular circumstances of sources of money that you should be applying to in order to help finance your education. Why doesn't that constitute financial advisory service? It's a tailored commercial product which promises a knowledge base in a non-finance matter, and that's why it's a commercial advisory service on individual financial matters, but not a financial advisory service. But he's using the term financial advisory at least earlier in the period of time. But then maybe he looked at the statute and decided, I need to change my name here. If he had looked at the statute, he would have argued this point most generously before the district court, Your Honor. But again, I guess my only answer to that is that when we think about financial aid, it's very easy to confuse student loans with mixed financial aid. It took me about a week to realize that as well. And unwittingly, he was using it in the sense of to do with money, but it just so turns out that Congress was not using it in that sense, and that is our point. Congress' intent matters. We have you way over your time. That's right. I'll still give you a minute for rebuttal, but we better hear from the other side. Sounds good. Thank you. Thank you. May it please the Court, Derek Zahn for the CFPB. The undisputed evidence below showed that Mr. Aria's company, Global Financial Support, sent millions of consumers letters advertising a program that would help them identify and obtain financial aid matched to their qualifications and background. After receiving these solicitations, at least 76,000 consumers signed up and paid Global's fee. In exchange, Global provided, at most, a booklet that contained general advice about financial aid and limited information about certain scholarships, often including scholarships that the relevant consumer was not even eligible for. Based on this evidence, the District Court concluded that Mr. Aria and Global are subject to the Bureau's jurisdiction and that there was no genuine dispute that they had violated the CFPA's prohibition on deceptive conduct. As remedies, the District Court ordered Mr. Aria and Global to pay back the roughly $4.7 million that they had deceived consumers into paying and also imposed $10 million in civil penalties. Each of those rulings was legally correct and well supported by the record, and the District Court should be affirmed. To begin with the jurisdiction issue, I'll be very frank and say that your honors may have covered many of the points that I intended to make, so I will limit myself a little bit here. I did want to address Mr. Aria's argument about Count 1, which regards the misrepresentations that Global offered or would apply to scholarships on consumers' behalf. That argument is asking the wrong question. The CFPA does not prohibit misrepresentations only if they mislead a consumer into believing a financial product or service is being offered. It prohibits a misrepresentation in connection with offering or providing those services. Here, the misrepresentations that Global would potentially offer scholarships itself or apply on consumers' behalf was made in the marketing letters that advertised the service, exaggerated the perceived value of those services in order to induce consumers to sign up. So there is no basis to dismiss Count 1. I also do want to clarify first that I do not believe that the distinction between student loans and scholarships is relevant for purposes of the Financial Advisory Clause. However, to the extent anyone thought that was relevant, I do want to point out that it is not strictly true that Mr. Aria's service did not address student loans at all. If, for example, you look at page 304 of the excerpts of record, he does offer advice that relates to student loans. He talks about how you can deduct student loan interest from your taxes and asks you to even consider a second mortgage to finance your college education. And on the next page, he talks about how loan forgiveness can be deducted from your taxable income. So even if you believed that student loans were somehow different, Mr. Aria and Global would still fall within the Bureau's jurisdiction. Another point that I want to make has to do with legislative history and statutory context. Helping consumers and protecting consumers trying to pay for college is one of the core concerns that Congress had when it passed the CFPA. That's why, for example, offering or providing loans for a higher education is one of the reasons that an entity can become subject to the Bureau's supervision authority. So both the statutory text and its purpose confirm that Mr. Aria and Global are covered persons under the CFPA. I'll turn now to the deception point and the court's granting of summary judgment as to liability. The district court correctly applied the net impression test when it focused on the solicitation materials. This court has made clear in cases like FTC v. AMG Capital Management that a defendant cannot avoid liability for deceptive marketing materials by arguing that consumers should have caught on after the fact. The district court did thoroughly explain how the marketing materials mislead consumers about the nature of Global's services, and those materials are in the record, and I think they speak for themselves on this point. I do want to make four points about the argument Mr. Aria raised in his reply about certain sets of forms and guidebooks that are associated with Iowa consumers. First, the district court was completely correct not to consider those documents below for a very simple reason, that Mr. Aria did not point to those documents as evidence that he customized his guidebooks based on the forms. He did include them among thousands of pages of exhibits that he attached to his opposition, but he did not cite them for that point. Second, even if the district court had been pointed to those documents, it still could have refused to consider them. As the district court noted under SEC v. CALEO, Mr. Aria forfeited the right to introduce evidence on this point when he obstructed discovery into how he created his guidebooks, including whether and how he customized them based on the form. What Mr. Aria is doing is trying to use the Fifth Amendment as both a shield and a sword. He's saying he can cherry-pick the documents that he puts into the record, take the Fifth to avoid answering questions under oath about them or to produce additional documents that might be relevant, and then to use the record he has selectively created to his advantage. Third, even if you did consider those documents now, it should be noted that all of the documents that he points to now are only for the academic year 2015 to 2016. Sorry, can I just pause here? It seems like these arguments, these four you're making now, are about the merits of whether he actually provided the service that he promised. Yes, Your Honor. But I don't actually think he even challenged that point in the opening brief. I'm not sure that issue is even before us. I mean, he's really saying the problem here is this wasn't financial and he's not an expert in other things. He's not really saying any way I provided everything. In the reply, maybe he is, but in the opening brief, did he argue what you're responding to now? Your Honor, I certainly agree it was not very clear. I certainly did not understand him to be challenging the district court's weighting of the evidence so much as merely asserting without evidence. But because he did bring it up in reply and we did not have an opportunity to address it in the brief, I wanted to make sure that we made those points now. But to your point, I certainly agree that that argument was waived because it wasn't made in the opening brief and need not be considered for that reason as well. So what does financial mean in the phrase financial advisory services? Your Honor, I believe that financial means relates to the management of money as the Supreme Court held in U.S. v. Renzi. And as I said, I think many of your questions to my colleague raised many of the points. It's sort of a plain meaning of the statutory term, clearly covers it. I do want to note that I do think, because the CFPA does cover persons based on whether certain products or services are offered, that it is important to think about what a reasonable consumer would expect to receive based on solicitation materials when jurisdiction is based on an offering. And other than the statutory context confirming that financing of higher education in particular was a core concern of Congress, I don't really believe that there should be a serious dispute, especially considering Mr. Aria did not dispute that he provided financial advisory services to the District Court. So that argument is waived as well. Well, he made different arguments. He did argue that, but he made arguments that he's not making now. I think one of them was that publications were not a product, that the materials weren't individualized, and therefore they didn't count. And I think there was a third thing about the booklets not being proprietary. But, I mean, he was talking about this phrase about financial advice, but is it your position then that the current argument about financial is forfeited? Your Honor, I do believe that it could be considered forfeited. As you note, he did challenge whether his advisory service was on individual financial matters or whether it related to a proprietary financial product or service, but he never disputed that what he was providing was a financial advisory service in the first place. So that is a new argument that the District Court was not presented with. So I do believe it was waived for purposes of appeal. And I guess I will turn back to the deception arguments. As I said, even if you considered the documents now, they are only for the academic year 2015 to 2016, so they could not have any impact on his liability for other academic years. And fourth and finally, I think this whole line of argument is a little bit of a red herring, because even if we assume that Global sometimes added additional sections to its booklets based on information in a consumer's form, that would still not be enough to make its misrepresentations true. So as the District Court noted, and as I believe Judge Tallman noted earlier, the solicitation materials promised or led consumers to believe that they would receive individually tailored products by using phrasing like, conducting extensive searches to match your qualifications and backgrounds. Mr. Aria admits that he did not individually tailor these guidebooks. So whether or not you believe that he added additional sections to its guidebooks, sometimes based on the consumer information forms, that would still not be enough to avoid liability, because his solicitation materials were still deceptive. Having correctly concluded that there was no genuine dispute as to whether Mr. Aria and Global had misled consumers about the nature of global services, the District Court also correctly awarded restitution in the full amount that consumers were misled into paying. Under this Court's very recent decision in cash call, the District Court's award was correct for at least two separate reasons. First, cash call reaffirms that it was Mr. Aria's burden to prove that the net revenues established by the Bureau overstated his unjust gains. Mr. Aria didn't even try to satisfy that burden on summary judgment. He did not address restitution at all. He did not argue that expenses should be deducted. And even on reconsideration, he just generally asserted that expenses should be deducted, but he did not present or point to any evidence that would establish a specific figure that should have been deducted. Mr. Aria says in his reply that the Bureau provided that evidence, but that is completely incorrect. The Bureau could not do that because Mr. Aria refused to cooperate in discovery into his or Global's finances. It's true that we were able to obtain some bank statements that showed some transactions that appeared as potentially being legitimate business expenses, but because Mr. Aria obstructed discovery, there's no record to establish whether any or how many of those transactions should be deducted. So even if you thought that expenses in theory should be deducted from a restitution award, the District Court still would have been correct not to deduct any on the record that it actually had. Second, Cash Call also makes clear that the restitution awarded in this case was legal, not equitable, because it was not restitution of a particular asset or traceable funds. It was a personal liability that is enforceable against any asset that Mr. Aria or Global have an interest in. So under Cash Call, that's enough to say that Liu VSCC's discussion of equitable discouragement or the Seventh Circuit's discussion in Consumers First, which dealt with equitable restitution, just do not have any bearing here. Finally, on the civil penalties question, the District Court correctly awarded $10 million in civil penalties based on at least 76,000 violations of the CFPA that it found Mr. Aria and Global had committed. Excuse me, Counsel. I didn't think they were challenging the penalty. Am I wrong about that? Are they challenging the penalty as well as the restitution or only the restitution? Your Honor, they are challenging the penalties as well. They have made an argument that the District Court incorrectly calculated the statutory maximum, because Which was what, $100 million? It was in the hundreds of millions. I believe the exact figure, based on 76,000 violations, would be $380 million. Did they make that exact argument to the District Court? I guess that's what I'm wondering. No, Your Honor, Mr. Aria. Potentially, that's a forfeited argument. Yes, Your Honor. Thank you. And also, your substantive response is that it's under this maximum anyway, right? I have two substantive responses. First, yes, Mr. Aria agrees that the $10 million award that was actually ordered is still below the statutory maximum, even the way he calculates it. But then my second substantive point is that the District Court was absolutely correct about the statutory maximum. CFPA permits up to $5,000 in civil penalties for any violation. It does not say for any day that a defendant violates the law, no matter how many separate violations he commits that day. It does speak about penalties for each day, which is a language that Mr. Aria relies on. I think it's very clear that that language is intended to be used when a violation continues past a single day, but cannot reasonably be construed to be intended to limit penalties when someone violates the law in multiple ways on the same day. So for both of those reasons, I don't think it's clear that the statutory maximum even mattered, but if it did, the District Court was correct, so its civil penalty award was absolutely correct as well. Um... Um... I guess I'll just close and say the District Court should be affirmed because each of its rulings was legally correct and well supported by the record. Thank you, Congress. Let's give you, I think two minutes for rebuttal. I believe it was three. Oh, sorry, I didn't remember. Do we have three left? I think we took you over your time, so I think I'll do two. No worries. Thank you, Your Honor. I just wanted to start in reverse order just to make sure that we cover everything. On civil penalties, I'll cite to CFPB v. Cash Call where it says that an error of law is an abuse of discretion. So the fact that the coincidence of the actual penalty awarded being less than the per-day amount, it's still an error of law and therefore it's still something... Harmless, right? Why isn't it harmless? Your Honor, it's not harmless because there's a six-factor consideration and the District Court twice said in its opinion that especially because the maximum is so high, I'm okay with, you know, the District Court is okay with awarding $10 million. So we really don't believe it's harmless. You know, it's just common sense if $300 million is on the table and somebody just gets $10 million, it seems reasonable. But if the maximum is $10 to $13 million, it's a much closer call. On the waiver issue for both types of damages... I'm not sure I understood that argument. If it's $10 to $13 and the District Court picks $10, where's the error? Because the District Court thought that the maximum was $350 million. So the question is... You picked $10 million. I mean, okay, so the District Court erred in its understanding of the statute, but I'm having a hard time seeing prejudice here. If you think the actual range should have been $10 to $13. The District Court is obliged under 5565 to do a six-part analysis. There are six factors that it has to consider and it considered those factors in about two lines because of the fact that it said especially when the maximum penalty is greater than $100 million. The District Court could still impose $10 million on remand, couldn't it? It could, and that's why it matters under Cash Call that an error of law is an abuse of discretion, despite the facts. An abuse of discretion if the error results in harm. And I'm still having a hard time understanding how Mr. Arya is prejudiced. I guess our contention most clearly stated would be that if that error was not committed, the District Court would not have awarded $10 million, it might have awarded something like $1 to $2 million. So, that is the harm we are alleging, whether you believe that or not. Okay, I understand your argument. On waiver, I guess the only thing that I would like to say is that we request you to consider that Mr. Arya for three years has been sifting through tens of thousands of pages of documents himself, and he was very focused on summary judgment, and yes, he did not reach the issue of damages, but we do think that it's quite unfair. On motion for reconsideration, the District Court itself agreed that if lieu applied, then there would be clear error and reconsideration would be appropriate. But it said that lieu didn't apply. So, to the extent that that makes a difference to your decision, I just wanted to put it out there. I've now given you three minutes, even though you had two, so I think I need to cut you off. Thank you, counsel. Thank you, both sides, for the helpful arguments. This case is submitted.
judges: GRABER, TALLMAN, FRIEDLAND